**Harry WELTMAN, Appellant,**

**v.**

**Ozzie SILNA; Daniel Silna; Donald Schupak; Spirits of St. Louis Basketball Club, L.P.; and Pak Fabrics, Inc., d/b/a Pak Fabric Sale Co., Appellees.**

**No. 90–1940.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1991.

Decided June 11, 1991.

Rehearing and Rehearing En Banc Denied Aug. 6, 1991.

Leo V. Garvin, Jr., St. Louis, Mo., for appellant.

Thomas M. Newmark, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Harry Weltman appeals the district court's [1] judgment denying his claim to a limited partner's share of the proceeds received by the former American Basketball Association (ABA) team, the Spirits of St. Louis, pursuant to a 1976 merger agreement between the ABA and the National

---

**1.** The Honorable Roy W. Harper, United States Senior District Judge for the Eastern and West- ern Districts of Missouri.

Basketball Association (NBA).[2]  On appeal, Weltman contends that the district court's finding that he had withdrawn from the partnership is not supported by sufficient evidence.  We affirm.

## I. BACKGROUND

Weltman participated in the purchase of an ABA franchise by a limited partnership, formed under Delaware law, which operated under the name Spirits of St. Louis Basketball Club, L.P. (Club).  On October 14, 1974, the Club filed its original certificate of limited partnership, listing as general partner, Pak Fabrics, Inc., a New Jersey corporation of which Weltman served as president.  The certificate listed Weltman and the individual appellees as the limited partners, with Weltman holding a five percent stake in the partnership.[3]  Weltman served as president and general manager of the Club.

The Club did not thrive in St. Louis and thus faced immediate financial difficulties, prompting the partnership to seek out additional investors in the fall of 1974.  The Club's mounting financial problems caused Weltman some concern about his potential exposure to personal liability for the debts of the partnership.  Weltman expressed this concern to attorney and limited partner Donald Schupak.  Schupak later testified that he responded to Weltman's concerns by assuring Weltman his name would be removed from the ranks of the limited partners, thus shielding him from any further potential liability, and that this change of status would be reflected in an amended certificate of limited partnership.

Schupak, in the meantime, had drafted and distributed a private placement memorandum as part of his campaign to attract additional investors to the Club.  After his discussion with Weltman, Schupak amended the memorandum to expressly state that Weltman had resigned as a limited partner. Schupak sent the amendments to the memorandum to Weltman by both telex and mail.

On December 31, 1974, the Club executed an amended certificate of limited partnership which added to the list of limited partners a number of new investors.  Consistent with Schupak's previous assurances, the amended certificate did not include Weltman's name in the list of limited partners.  Weltman, acting in his capacity as president of the general partner corporation and attorney-in-fact for the limited partners, signed the amended certificate reflecting his withdrawal as a limited partner.  The partnership filed the amended certificate with the Delaware Secretary of State on April 15, 1975.

As part of the settlement of a lawsuit which the ABA had filed against the NBA, the Club ceased operations in July 1976. Under the settlement, the Club sold its player contracts to new NBA expansion clubs in exchange for present and deferred cash payments as well as a share of the NBA's future television revenue in perpetuity.

Some years later, Weltman began to inquire into the distribution of the funds which the partnership continued to receive as a result of the settlement with the NBA.[4]  When the partnership rebuffed his inquiries, Weltman filed this suit claiming that he was entitled to a limited partner's share of the settlement proceeds and requesting an accounting.  He specifically contended that under Delaware partnership law the amended certificate reflecting his withdrawal as limited partner was invalid.

**2.** The district court's decision is published as *Weltman v. Silna,* 739 F.Supp. 477 (E.D.Mo. 1990).

**3.** The limited partnership certificate provided that in the event of the sale of the Club, Weltman would receive five percent of the proceeds remaining after the principal investing limited partners had recouped their initial investments.

**4.** The actual date of Weltman's inquiries is not clear from the record.  Weltman suggests that he inquired into the distribution of the settlement funds at the point in time that he estimated the partnership had received sufficient funds from the settlement to have permitted the original principal investing limited partners to recoup their initial investments, as required under the terms of the original limited partnership certificate.

He asserted that a withdrawing limited partner must sign the amended certificate effectuating his withdrawal in order for the amended certificate to have legal validity. Weltman thus contended that because the amended certificate was invalid, he remains a limited partner and is therefore entitled to a share of the NBA settlement proceeds.

The district court conducted a bench trial in March of 1988 and entered an opinion in September of that year concluding that, under Delaware partnership law as amended in 1986, Weltman's signature in his capacity as limited partner was not necessary to effectuate his withdrawal from the limited partnership and render the amended certificate legally valid. On appeal, this court reversed and remanded with instructions to the district court to apply the pre–1986 Delaware partnership law in effect at the time of the execution of the original and amended certificates. *Weltman v. Silna,* 879 F.2d 425 (8th Cir.1989).

On remand, the parties submitted the case to the district court on the basis of the record developed in the earlier bench trial. The district court again concluded that the amended certificate was valid so far as it reflected Weltman's withdrawal as limited partner. It found that Weltman had withdrawn from the partnership prior to the amendment of the certificate, and concluded that his signature in his capacity as a former limited partner was not necessary to give binding force to the subsequent amendment to the certificate reflecting his withdrawal. This appeal followed.

## II. DISCUSSION

Weltman's principal assertion on appeal is that the amended certificate reflecting his withdrawal from the partnership is not valid because he did not sign it in his capacity as limited partner. The district court determined that the amended certificate did in fact comply with Delaware limited partnership law in effect at the time of the events in question. *See* Del.Code Ann. tit. 6, §§ 1701–1730 (1974) (repealed 1982).

In the course of making this determination, however, the district court also found that Weltman had withdrawn from the partnership *prior* to the amendment of the certificate. We believe this finding is dispositive of the legal dispute between the parties.

█  Weltman's focus on the validity of the amendment to the certificate evidencing his withdrawal presupposes that the withdrawal of a limited partner under then-existing Delaware limited partnership law was not effective until the certificate of limited partnership had been amended. However, the provisions of the Delaware limited partnership statute then in effect did not impose any conditions precedent to the effective withdrawal of a limited partner. Consequently, we agree with the district court's conclusion that Weltman did not need to sign the partnership's amended certificate as a condition precedent to his effective withdrawal.[5] *See* Del.Code Ann. tit. 6, § 1724 (1974) (repealed 1982); *cf. Nobel v. Morchesky,* 697 F.2d 97 (3d Cir. 1982) (under provisions of Pennsylvania Limited Partnership Act mirroring Delaware statute, retired general partner is not required to sign amended certificate of limited partnership in order to be considered retired). We therefore turn our attention to the district court's finding that Weltman had withdrawn prior to the amendment of the certificate, a finding which Weltman asserts is not supported by sufficient evidence.

We review the district court's finding of fact under a clearly erroneous standard. Fed.R.Civ.P. 52(a); *see Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *LCA Corp. v. Shell Oil Co.,* 916 F.2d 434 (8th Cir.1990). Thus, we reverse only if our review of the entire record leaves us with a "definite and firm conviction" that a mistake has been made. 470 U.S. at 573, 105 S.Ct. at 1511. Having reviewed the record in its entirety, we conclude that the district court's finding that Weltman withdrew prior to the amendment of the certificate is not clearly erroneous.

---

5. That statute required an amendment to the certificate upon the withdrawal of a *general* partner, Del.Code Ann. tit. 6, § 1724(b)(5) (1974) (repealed 1982), or when an individual is *substituted* as a limited partner, Del.Code Ann. tit. 6, § 1724(b)(2).

■ The record shows that Weltman was well aware of the Club's financial difficulties. These difficulties led him to discuss his concerns about potential exposure to liability with attorney and limited partner Donald Schupak.[6] Schupak testified that he assured Weltman that his liability concerns would evaporate upon his removal from the limited partner ranks. Shortly after this conversation and prior to the amendment of the limited partnership certificate, Schupak amended a private placement memorandum to prospective investors to state that Weltman had resigned as limited partner. Schupak further testified that he sent Weltman copies of the amended prospectus.

The record also contains additional evidence consistent with the district court's finding that Weltman had withdrawn from the partnership including, *inter alia*, Weltman's personal income tax returns in which he failed to declare any partnership interest, and the partnership's tax returns, which are similarly void of any reference to Weltman's purported continuing association with the Club. Weltman provided countering evidence in support of his claim; however, we cannot say that the district court's account of the evidence is implausible in light of the record viewed in its entirety. *See Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511. At worst, the record supports two permissible views of the evidence regarding the issue of Weltman's prior withdrawal. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511. Consequently, we reject Weltman's contentions.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

**6.** Although Weltman's limited partner status would ordinarily limit his potential liability to creditors, his role as president and general manager of the Spirits subjected him to potential general partner liability as one who "takes part in the control of the business." Del.Code Ann. tit. 6, § 1707.